IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

MARIE BERNADETTE MURPHY,

       Plaintiff,

   v.

                                    Civil No. 2:15cv378

CAROLYN W. COLVIN,

       Acting Commissioner, Social
       Security Administration,
       Defendant.

## ORDER

In the instant suit, Marie Bernadette Murphy ("Plaintiff") challenges the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") to deny her application for Disability Insurance Benefits. Plaintiff claims complete disability under the Social Security Act starting on October 9, 2011. This matter comes before the Court on Plaintiff's Objections to Magistrate Judge Lawrence R. Leonard's Report and Recommendation ("R&R") ("Plaintiff's Objections"). For the reasons stated herein, the Court: (1) **ACCEPTS** the R&R, ECF No. 17; (2) **AFFIRMS** the decision of the Commissioner; (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12; and (4) **GRANTS** Commissioner's Motion for Summary Judgment, ECF No. 14.

## I.      BACKGROUND

Neither party objects to the recitation of the procedural and factual background of this case contained in the R&R, *see* ECF No. 17 at 2–15, which sets forth, *inter alia*, the following facts.[1]

———————————————

[1] This Court defers to the full recitation contained in the R&R on all other matters.

### A. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on December 23, 2011. R. at 155–58.[2] In this initial application, Plaintiff alleged disability from October 9, 2011, due to chronic pain/myofascial pain, cervicalgia, degenerative disc disease, panic attacks, anxiety, and depression. Id. Plaintiff's date last insured ("DLI") is June 30, 2012. Id. at 15. To qualify for DIB, she is required to show disability on or before that date. 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.101(a), 404.131(a).

Plaintiff's application for DIB was denied March 19, 2012, R. at 101–05, and denied upon reconsideration on January 7, 2011, id. at 110–16. A hearing before the administrative law judge ("ALJ"), Judge William T. Vest, was held on December 10, 2013. Id. at 34–71. On February 6, 2014, the ALJ issued a decision denying Plaintiff's DIB application. Id. at 10–27. On June 25, 2015, the Appeals Counsel denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Id. at 1–6.

Pursuant to 42 U.S.C. § 405(g), Plaintiff timely filed this action seeking judicial review of the Commissioner's final decision. ECF No. 1. Plaintiff filed a Motion for Summary Judgment and a Memorandum in Support on December 30, 2015. ECF Nos. 12, 13. Commissioner filed a Cross-Motion for Summary Judgment and Memorandum in Support on February 3, 2016. ECF Nos. 14, 15. On February 16, 2016, the Plaintiff filed a reply brief in support of her Motion for Summary Judgment and in opposition to the Commissioner's motion. ECF No. 16. The matter was then referred to United States Magistrate Judge Lawrence R. Leonard pursuant to: (1) 28 U.S.C. § 636(b)(1)(B)–(C); (2) Rule 72(b) of the Federal Rules of Civil Procedure; (3) Rule 72 of the Local Rules for the United States District Court for the

---

[2] For the purposes of this Opinion, "R." refers to the certified administrative record filed under seal on October 30, 2015, which is ECF No. 6 on the docket.

Eastern District of Virginia; and (4) the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges.  Judge Leonard issued his R&R with respect to the parties' opposing motions on June 22, 2016.  ECF No. 17.  The R&R recommends that this Court deny Plaintiff's Motion for Summary Judgment, ECF No. 12; grant the Commissioner's Motion for Summary Judgment, ECF No. 14; affirm the final decision of the Commissioner; and dismiss this matter with prejudice.  Id.  Plaintiff filed her objections to the R&R on July 5, 2016. ECF No. 18.  Commissioner responded on July 22, 2016.  ECF No. 19.

### B.  FACTUAL BACKGROUND

The following recitation is a condensed version of those facts presented in the R&R, which this Court incorporates herein.  See ECF No. 17 at 3–14.  As of Plaintiff's DLI, June 30, 2012, Plaintiff was a forty-one-year-old female who had graduated from high school and attended two years of college.  R. at 194.  She previously worked as a school bus driver (2005–2007) and a coordinator for Lake Tale Hospital (1991–2005).  Id.  In her application, Plaintiff alleged a disability onset date of October 9, 2011.  Id. at 155.  She claims her health conditions became severe enough to prevent her from working on October 1, 2011.  Id. at 193. However, Plaintiff stopped working more than four years earlier on May 31, 2007.  Id.  Plaintiff testified at her administrative law hearing that she stopped working in 2007 due to "severe pain in [her] lower back," a "nervous breakdown," and family obligations, including the care of her son.  Id. at 40.

Plaintiff's relevant medical treatment began with an MRI of her lumbar spine on May 28, 2010, after she complained of lower back pain with right sciatica.  Id. at 560–62.  The scan revealed disc protrusion and bulges at multiple levels, with the most pronounced protrusion

3

presenting at the L4–L5 vertebrae. Id. at 561. However, there was no evidence of significant stenosis. Id.

In July 2010, Plaintiff sough treatment for ongoing pain in her left foot after stepping on glass; depression with anxiety; chronic pain in her left foot, back, both hips, and shoulders; and elevated blood pressure. Id. at 602. At that time, Plaintiff was diagnosed with depression with anxiety and chronic pain. Id. On October 9, 2010, Plaintiff underwent an MRI of her cervical spine, which identified no disc herniation, stenosis, nor abnormal enhancement of the spinal cord. Id. at 372.

On May 5, 2011, Plaintiff presented to Mark Kerner, M.D. ("Dr. Kerner"), at Virginia Orthopedic & Spine Specialists ("VOSS") with complaints of a snapping sensation in her neck, leaving her with severe neck pain and radiating left arm pain with a burning numbness in her left arm. Id. at 557. Dr. Kerner noted that Plaintiff was in "significant pain," that she was "almost in tears," and that she had "antalgic" (pain-avoidant) range of motion of her neck. Id. After examining a CAT scan and a bone scan, Dr. Kerner determined that both were benign. Id. at 558. Dr. Kerner did not believe that there was any "true" bony pathology in Plaintiff's neck. Id. Dr. Kerner ordered a repeat MRI of Plaintiff's cervical spine due to Plaintiff's "statements of progressive pain." Id.

On May 31, 2011, Dr. Kerner assessed the repeat MRI. Id. at 556. The scan demonstrated migratory edema within the vertebral bodies but no evidence of infection or other pathology. Id. Dr. Kerner concluded that there was "nothing surgical" in Plaintiff's neck. Id. Plaintiff returned on June 20, 2011, for Dr. Kerner to review a CAT scan of Plaintiff's neck. Id. at 555. In a progress note, Dr. Kerner recorded the following: "I have not been able to objectify the source of this pain. Her swallowing studies are normal. Her blood work is normal. The

4

CAT scan . . . demonstrated no soft tissue injury in the neck. It does mention abnormalities in the chest[.]" Id. He then concluded that there was "nothing with regards to [Plaintiff's] cervical spine . . . that explains her symptomatology." Id.

On September 2, 2011, Plaintiff visited Donald Holzer, M.D. ("Dr. Holzer"), at the Bon Secours Neuroscience Center for Pain Management ("Center for Pain Management") complaining that her Oxycodone prescription was losing its efficacy. Id. at 415–20. Plaintiff reported that she was experiencing the "worst pain ever," a 10/10 on the comparative pain scale. Id. at 417. Plaintiff also exhibited tenderness with a decreased range of motion in her shoulders, elbows, wrists, and lumbar spine. Id. at 416.

Between November 2011 and January 2012, Plaintiff continued to receive treatment and medical testing from a number of medical care providers, including Lisa Blount, F.N.P.-C., at VOSS, id. at 554, and Melissa McCrary, P.A. ("P.A. McCrary"), and Charlotte Kirkman, L.P.N, at the Center for Pain Management, id. at 388–401. On January 30, 2012, Plaintiff returned to VOSS to follow up with Theresa Jackson, M.D. ("Dr. Jackson"). Id. at 552–53. Dr. Jackson noted that Plaintiff appeared to have no severe neural foraminal narrowing, despite the very mild degenerative changes at the C3-4 and C4-5 levels noted on the MRI. Id. at 552. Dr. Jackson felt that Plaintiff had a significant myofascial component to her pain and offered trigger point injections. Id. Plaintiff declined the injections because she needed to return home to take care of her children. Id. Dr. Jackson ordered a home exercise program and instructed her to follow up. Id. Plaintiff ultimately underwent the recommended trigger point injections on May 25, 2012. Id. at 816–17. Dr. Jackson administered the injections and noted that Plaintiff's cervical MRI continued to reveal only mild degenerative changes. Id. at 816.

5

On July 18, 2012, Plaintiff returned to Dr. Holzer at the Center for Pain Management. Id. at 665. At this appointment, Plaintiff continued to complain of severe constant pain on the left side of the neck, left arm, left shoulder blade, low lumbar, and right leg with extension to the bottom of the left foot, both hands, and wrists. Id. Dr. Holzer reported that, though Plaintiff's current pain medication regimen reasonably controlled her pain, Plaintiff felt the need for breakthrough medication. Id. at 665. Dr. Holzer prescribed hydromorphone, another opiate, for breakthrough pain. Id. At the conclusion of the appointment, Dr. Holzer discussed with Plaintiff that, despite extensive testing, a clear diagnosis was potentially impossible. Id.

Following the July 18, 2012, appointment, Dr. Holzer ordered a repeat MRI of Plaintiff's cervical and lumbar spines. Id. at 666. The scan of her lumbar spine revealed overall mild degenerative disc disease with a mild disc bulge at L4-L5 and a mild disc protrusion at L5-S1. Id. at 653, 662. Dr. Holzer also ordered a DXA bone densitometry test, which proved unremarkable. Id. at 944–46.

On July 31, 2012, Dr. Jackson completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) regarding Plaintiff. Id. at 585. On this evaluation form, Dr. Jackson opined that Plaintiff could both lift and carry, "occasionally," up to fifty pounds, and "frequently," up to twenty pounds. Id. He also opined that Plaintiff could sit, stand, and walk between thirty minutes and one hour at a time without interruption in an eight-hour workday. Id. at 586. Dr. Jackson further concluded that Plaintiff could "continuously" reach, handle, finger, and feel; that she could "frequently" push and pull; and that she could "occasionally" reach overhead, id. at 587; but that she could "never" climb ladders or scaffolds, stoop, kneel, crouch, or crawl, id. at 588. Dr. Jackson also noted throughout the evaluation form that Plaintiff had continued cervical spine pain. Id. at 585, 587, 590.

6

On October 2, 2012, Plaintiff returned to see Dr. Kerner at VOSS for complaints of pain. Id. at 814. An MRI of her cervical spine was "essentially normal[, with] . . . minor degenerative chances, but subtle and normal for her age. There is no focal stenosis or instability or any ostensibly objective anatomic pathology of significance." Id. Dr. Kerner indicated that Plaintiff has "myofascial pain syndrome or fibromyalgia," but that there is no surgical solution for her pain as there is no one anatomic pathology that surgery could address. Id. at 815. Further, Dr. Kerner stated that Plaintiff's depression is significant and affects her ability to deal with pain, and that he did "not believe there is any true anatomic pathology present that one could directly relate to any of her complaints in any meaningful way." Id.

From July 2013 through November 2013, Plaintiff continued to seek medical diagnoses and medications for pain management. See id. at 837, 832, 760, 1003, 1006. On November 26, 2013, Plaintiff was admitted to Maryview Medical Center for an "opiate detox," at which time she admitted to abusing pain medications. Id. at 1037–39. Plaintiff was then put on a treatment plan to address her opioid withdrawals. Id. at 1040.

## C. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

Under the required five-step sequential analysis, see discussion infra Section II, the ALJ made the following findings of fact and conclusions of law: First, the ALJ found that Plaintiff did not engage in substantial gainful activity since October 9, 2011, the alleged onset date of disability. R. at 15. Second, Plaintiff had the following severe impairments: degenerative disc disease, depression, anxiety, and arthritis. Id. (citing 20 C.F.R. § 404.1520(c)). Third, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 16.

---

[3] This section is adopted almost verbatim from the R&R. See ECF No. 17 at 15.

The ALJ assessed the severe impairments under multiple listings, such as disorders of the spine (listing 1.04(A)), major dysfunction of a joint (listing 1.02), and mental impairments (listings 12.04 and 12.06). Id. Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) with the following limitations: Plaintiff is unable to climb, or engage in work overhead, she can occasionally stoop or squat but not crawl, and she is limited to simple, routine tasks. Id. at 18. Fifth, while Plaintiff is unable to perform past relevant work, the ALJ found that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. at 20-21. The ALJ, relying on the Vocational Expert's opinion, found that suitable jobs exist, including surveillance system monitor, cashier, and hand packer. Id. at 21. Therefore, the ALJ determined that Plaintiff had not been under a disability from October 9, 2011, through June 30, 2012. Id. at 22.

## II.    STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews *de novo* any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. The Court may reject perfunctory or rehashed objections to an R&R that amount to "a second opportunity to present the arguments already considered by the Magistrate-Judge." Gonzalez-Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005); see Riddick v. Colvin, 2013 WL 1192984 *1 n.1 (E.D. Va., Mar. 21, 2013).

As the present claim is regarding a determination of benefits, the Court finds it necessary to review both the standards applied to the determination and the findings of the ALJ. "Determination of eligibility for social security benefits involves a five-step inquiry." Walls v.

8

Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); see also Johnson v. Barnhart, 434 F.3d 650, 653 n.1

(4th Cir. 2005) (per curiam). "The claimant has the burden of production and proof in Steps 1–4.

At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs

exist in the national economy that the claimant can perform considering h[er] age, education, and

work experience." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing Hunter v.

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (internal citation omitted) (internal

quotation omitted). If a determination of disability can be made at any step, the Commissioner

need not analyze subsequent steps. Id. (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity

at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that she

has "a severe impairment . . . which significantly limits . . . [her] physical or mental ability to do

basic work activities." Id. § 404.1520(c). Third, if the claimant's impairment matches or equals

an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to

last—for at least twelve months, then the claimant is disabled. Id. § 404.1520(d); see 20 C.F.R.

pt. 404, subpart P, app. 1 (listing impairments). If, however, the impairment does not meet one

of those listed, then the ALJ must determine the claimant's RFC. The RFC is determined based

on all medical or other evidence in the record of the claimant's case. Id. § 404.1520(e). Fourth,

the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past

relevant work." Id. § 404.1520(f). Fifth, if it is determined that the claimant cannot meet the

demands of past relevant work then, the ALJ then considers the claimant's RFC and vocational

factors to determine if she can make an adjustment to other work. If the claimant cannot make

such an adjustment, then she is disabled for purposes of the Act. Id. § 404.1520(g)(1).

9

The Court's review of this five-step inquiry is limited to determining (1) whether the decision was supported by substantial evidence on the record and (2) whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 65. "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 650 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In performing its review, the court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653). As such, if the Acting Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. Hays, 907 F. 2d at 1456.

III.  **PLAINTIFF WAIVED REVIEW OF THE LAY TESTIMONY ISSUE BY FAILING TO FILE SPECIFIC AND PARTICULARIZED OBJECTIONS.**

Within fourteen days after being served with a copy of the magistrate judge's proposed findings and recommendations, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C.A. § 636(b)(1)(C) (West 2016). If such objections are filed, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. If a party fails to timely object to the magistrate judge's report, it waives its right of review. United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007). Furthermore, "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622; see also Fed. R. Civ. P. 72(b)(2) (requiring objecting party to file "*specific*, written objections to the proposed findings and recommendations") (emphasis added). Where Plaintiff has not raised a specific objection, the district court may adopt the magistrate judge's R&R absent "clear error on the face of the record." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment).

In her July 5, 2016, filing, Plaintiff's written objections to the R&R exclusively address the R&R's allegedly improper adoption of the ALJ's classification of "severe impairments" during step two of the sequential evaluation process. ECF No. 18. However, in the "Conclusion" section of her filing, Plaintiff attempts to incorporate by reference "the reasons noted . . . in the Plaintiff's previously filed Memorandum in Support of the Plaintiff's Motion for Summary Judgment" as part of her objections to the R&R. Id. at 4. This general language of incorporation does not constitute a specific written objection to the R&R as required for *de novo*

11

review by this Court. See Midgette, 478 F.3d at 621; Abou-Hussein v. Mabus, No. 2:09-1988, 2010 WL 4340935, at *1 (D.S.C. Oct. 28, 2010) (plaintiff's "word for word" restatement or "rehash[ing] the same arguments presented in his filings related to summary judgment" did not constitute specific objections to the R&R), aff'd, 414 F. App'x 518 (4th Cir. 2011); see also Edwards v. Niagara Credit Sols., Inc., 586 F. Supp. 2d 1346, 1349 (N.D. Ga. 2008) (petitioner's attempt to incorporate by reference facts that were stated in its motion for summary judgment and other filings "did not constitute a specific written objection to the R&R"), aff'd on other grounds, 584 F.3d 1350 (11th Cir. 2009).

Because Plaintiff only raised the issue of Michael Murphy's lay testimony in the Memorandum in Support of her Motion for Summary judgment, see ECF No. 13 at 2, and failed to raise it as a specific objection to the R&R, see ECF No. 18, the Court **FINDS** that Plaintiff has waived her right to *de novo* review of this issue under 28 U.S.C.A. § 636(b)(1)(C).   See Midgette, 478 F.3d at 621.   Having found no clear error, this Court **ADOPTS** the R&R's findings as to the lay testimony of Michael Murphy.

## IV.   PLAINTIFF'S OBJECTION TO THE FAILURE TO CLASSIFY CERTAIN CHRONIC PAIN CONDITIONS AS SEVERE IMPAIRMENTS

As stated above, the singular focus of Plaintiff's Objections to the R&R is that it affirms the ALJ's allegedly erroneous decision to "not list the conditions of [1] chronic pain/myofascial pain, [2] brachial neuritis or radiculitis, not otherwise specified, [3] myalgia and myositis, unspecified, [4] cervicalgia and [5] lumbago as severe impairments pursuant to Social Security Regulation 96-3p." ECF No. 18 at 1–2.   While large portions of Plaintiff's Objections constitute an improper "rehashing" of the arguments presented in her Memorandum in Support of the Motion for Summary Judgment on this issue, see Abou-Hussein, No. 2:09-1988, 2010 WL 4340935, at *1, this Court finds that Plaintiff has made three specific objections that are original

12

to this filing that require this Court's *de novo* review pursuant to 28 U.S.C.A. § 636(b)(1)(C). *See* discussion supra Section III. These objections include:

(1) That the ALJ failed to specifically address the issue of chronic/myofascial pain in failing to "specifically analyze the diagnosis of chronic pain rendered by Donald Holzer, M.D. on October 19, 2011." ECF No. 18 at 3.

(2) That the ALJ "made no specific reference to the diagnosis of cervicalgia (neck pain) rendered by Donald Holzer, M.D. on October 19, 2011[.]" Id.

(3) That the Magistrate Judge improperly relied upon Cook ex rel. v. Colvin, No. 2:11cv362, 2013 WL 1288156 (E.D.Va. March 1, 2013) to find that, even if error had occurred by the ALJ, such error was harmless. Plaintiff states that "without a specific analysis of the chronic pain diagnosis and the cervicalgia/neck pain diagnosis, it cannot be said that the discussion of the evidence related to these impairments was adequately made." ECF No. 18 at 4.

In Response to Plaintiff's Objections, the Commissioner argues that "each of Plaintiff's [enumerated] impairments relate to pain, which is merely a symptom . . . and is insufficient, standing alone, to establish that a severe impairment exists[.]" ECF No. 19 at 2 (citing 20 C.F.R. §§ 404.1529, 404.1528(a)). In support, the Commissioner cites Mickles v. Shalala, 29 F. 3d 918, 920 (4th Cir. 1994), which states that the consideration of pain "require[s] a causal connection between the pain and the objectively diagnosed medical condition." Based on the "objective medical evidence" on the record here, the Commissioner argues, there is no "medically determinable impairment that could reasonably be expected to cause the pain that [Plaintiff] alleges she suffers," and thus the ALJ's determination at step two of the five-step evaluation was supported by substantial evidence. ECF No. 19 at 2.

The Commissioner further argues that any error in the ALJ's classification of Plaintiff's chronic pain and/or cervicalgia, or any other of Plaintiff's alleged conditions, would indeed be harmless because the ALJ considered the "combined effect" of all Plaintiff's impairments, both severe and non-severe, on her ability to perform work in the economy. Id. at 3. Thus, the ALJ's

13

determination of Plaintiff's RFC would have been the same had he classified Plaintiff's above-enumerated conditions as severe impairments. Id.

As noted above, this Court's *de novo* review of Magistrate Judge's recommendation on the appeal of the the ALJ's decision is limited to determining (1) whether the proper legal standard was applied in evaluating the evidence and (2) whether the decision was supported by substantial evidence on the record. Determining whether a claimant has any severe impairments is the second step of the sequential evaluation process. At this step, the ALJ must consider whether the Plaintiff has "a severe impairment . . . which significantly limits . . . [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Plaintiff bears the burden of proof at this step to show that her impairments are severe. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).

## A. THE ALJ APPLIED THE PROPER LEGAL STANDARD WHEN CONSIDERING THE CHRONIC PAIN IMPAIRMENTS.

The Social Security Code makes clear the requirements to meet the threshold of severe impairment: "An impairment or combination of impairments is not severe if it does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Importantly, "pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 404.1529(a). Instead, "there must be medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." Id. In the Fourth Circuit, after the claimant proves a causal connection between the pain and a medical impairment, "the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994) (internal citation omitted). As such, although the Fourth Circuit

14

does not allow pain, standing alone, to constitute an impairment, where an impairment causing pain is proven by the Plaintiff, the severity of that pain must be considered even if only supported by the subjective statements of the Plaintiff. Id. Ultimately, however, the ALJ is required to consider how the alleged pain limits a claimant's ability to work. 20 C.F.R. § 404.1529(a) ("We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.").

Following the above framework, the ALJ correctly analyzed each of Plaintiff's pain-centric conditions not as separate impairments but as symptoms. Because Plaintiff's Objections apply only to pain-based conditions and diagnoses, see ECF No. 18 at 1–2, this Court finds no error in the legal standard applied by the ALJ when making his determination as to whether these conditions qualified as severe impairments.

### B.  SUBSTANTIAL EVIDENCE SUPPORTS THE DETERMINATION THAT PLAINTIFF'S CHRONIC PAIN DIAGNOSES ARE NOT SEVERE IMPAIRMENTS.

The second phase of this Court's *de novo* review is to determine whether the ALJ's determination that Plaintiff's chronic pain diagnoses were not severe impairments was based on substantial evidence in the record. See supra Section II at 10.

As a threshold matter, Plaintiff's claim that the ALJ failed specifically to consider the "the diagnosis of chronic pain rendered by Donald Holzer, M.D. on October 19, 2011," and "made no specific reference to the diagnosis of cervicalgia (neck pain) rendered by Donald Holzer, M.D. on October 19, 2011," ECF No. 18 at 1–2, does not persuade this Court that the ALJ failed to analyze these conditions. While the ALJ did not analyze in detail every diagnosis by Plaintiff's many physicians, the ALJ stated in his opinion:

15

All other impairments alleged and found in the record are nonsevere because either they did not exist for a continuous period of twelve months, they were responsive to medication, they did not require significant medical treatment, or they did not result in any continuous exertional or nonexertional functional limitations.

R. at 16 (internal citations omitted).  Evidence of both diagnoses is clearly contained within the administrative record, see R. at 409–13, and was thus carefully considered by the ALJ, as shown by the above statement.

The ALJ also specifically analyzed whether any of the Plaintiff's many conditions, or combinations thereof, satisfied or medically equaled one of the severe impairments listed in 20 CFR Part 404, Subpart P, App. 1, including "disorders of the spine" (listing 1.04(A)) and "major dysfunction of a joint, due to any cause" (listing 1.02).  R. at 16.  Notably, both listings require specific physical manifestations of the impairment beyond pain alone, such as limited or abnormal motion and "the inability to perform fine and gross movements effectively." Id.  The ALJ ultimately concluded that "the objective medical evidence, together with the results of physical examinations, fails to establish that both of these listings have been met." Id.  In sum, it is clear from the record that the ALJ considered the pain-based diagnoses that Plaintiff argues went unaddressed.

Additionally, in reviewing for substantial evidence, it is not the duty of this Court "to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Hancock, 667 F.3d at 472. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653).  Thus, to the extent the ALJ relied upon credibility determinations and judgments about conflicting evidence when making its determination as to Plaintiff's severe impairments, this Court will not disturb his finding.

16

Plaintiff was diagnosed with a series of chronic pain conditions by Dr. Holzer, see R. at

410–20, and Dr. Jackson, see R. at 552–53, in 2011 and 2012, respectively.  But other evidence

suggests that Plaintiff's reports of chronic pain conditions may have been the direct result of

drug-seeking behavior.  The ALJ describes in great detail the evidence of such drug-seeking

behavior that led him to find that Plaintiff is not "fully credible," including Plaintiff's history of

requesting, often adamantly, an increase in her pain medication as well as medical personnel

routinely refusing or limiting Plaintiff's access to prescription pain medications.  R. at 18–19.

The ALJ also noted that, in November of 2013, Plaintiff was admitted for a narcotic pain

medication detox program, at which time she admitted that she may have a problem with

"abusing" pain medication.  Id. at 18.

Furthermore, the record reveals a mixed bag of objectively evident impairments coupled

with a long record of Plaintiff subjectively perceiving impairments that were unsupported by the

medical evidence.  In May of 2010, when Plaintiff complained of lower back pain with right

sciatica, the MRI revealed some disc protrusion but showed no stenosis (the narrowing of the

open space in the spine).  R. at 561.  In July of 2010, Plaintiff was diagnosed with chronic pain

stemming from complaints of chronic pain in her back, both hips, and shoulders.  Id. at 602.

However, just four months later, in October of 2010, another MRI of her cervical spine identified

no disc herniation, stenosis, or abnormal enhancement of the spinal cord.  Id. at 372.

Similarly, in May and June of 2011, Plaintiff presented to Dr. Kerner, complaining of a

snapping sensation in her neck, leaving her with severe neck and radiating left arm pain with a

burning numbness in her left arm.  Id. at 557.  However, Dr. Kerner assessed an MRI, a CAT

scan, and bone scan of Plaintiff's neck, and advised that there was "nothing with regards to

[Plaintiff's] cervical spine . . . that explains her symptomatology."  Id. at 555.  In October of

17

2011, Plaintiff complained that she was experiencing the "worst pain ever," and that her Oxycodone prescription was losing its efficacy. Id. at 415–20. However, only two months later and after receiving a different prescription, Plaintiff returned to taking up to five Oxycodone per day. Id. at 410–11. Notably, upon reviewing this prescription history, P.A. McCrary denied Plaintiff's request for more prescription medication. Id. at 403.

In January of 2012, Plaintiff presented to the Center for Pain Management complaining of back pain, right leg pain, and left arm pain, but demonstrated a normal range of motion. Id. at 395–96. Again, Plaintiff requested an increase in her pain relief medication. Id. at 396. During a follow-up appointment a few weeks later, Plaintiff requested to "keep her treatment plan as is" despite reporting only 20% pain relief when using her medication regimen. Id. at 388.

In May of 2012, Plaintiff saw Dr. Jackson for trigger-point injections and requested additional pain medication, which he refused to prescribe since she was only to receive her medication from the Center for Pain Management. Id. at 816. Plaintiff received another MRI in July of 2012, which ultimately revealed the same mild degenerative disc disease that her four previous MRI's revealed. Id. at 653-62. She also received a DXA bone densitometry test at that time, which proved unremarkable. Id. at 944-46.

Finally, there is a dearth of credible evidence showing that Plaintiff's pain prevents her from performing every type of work. On July 31, 2012, Dr. Jackson filled out a Medical Source Statement of Ability to Do Work-Related Activities (Physical) regarding Plaintiff. Id. at 585. According to this evaluation, Plaintiff could both lift and carry, "occasionally," up to fifty pounds, and "frequently," up to twenty pounds, and she could sit, stand, and walk, between thirty minutes and one hour at a time without interruption in an eight-hour work day. Id. at 585–86. Dr. Jackson also opined that Plaintiff could "continuously" reach, handle, finger, and feel; that

18

she could "frequently push and pull; and that she could "occasionally" reach overhead; but that she could "never" climb ladders or scaffolds, stoop, kneel, crouch, or crawl. Id. at 587–88.

Given the substantial evidence outlined above of Plaintiff's drug-seeking behavior and the numerous inconsistencies and uncertainties stemming from her reported pain when compared to her medical diagnoses of physical impairments, it was reasonable for the ALJ to conclude that Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of *pain or other symptoms*" – where not substantiated by objective medical evidence – "are not entirely credible." R. at 18 (emphasis added). While Plaintiff repeatedly reported chronic pain, and was even diagnosed with chronic pain issues, a review of the objective medical evidence on the record reveals no medical impairment that is clearly the cause of the chronic pain conditions at issue here. Accordingly, this Court finds that the ALJ's determination as to whether Plaintiff's chronic pain conditions qualified as severe impairments was supported by substantial evidence.

### C. HARMLESS ERROR

The final objection before this Court is Plaintiff's claim that the Magistrate Judge erroneously applied Cook ex rel. v. Colvin, No. 2:11cv362, 2013 WL 1288156 (E.D.Va. March 1, 2013) to find that, even if the ALJ erred on this issue, such error was harmless. R&R, ECF No. 17, at 27. Specifically, the Magistrate Judge relied on Cook to reason that, in Steps 3–5 of the sequential evaluation, the ALJ considered the combined effect of all impairments and symptoms, even those designated as non-severe, and thus adequately weighed the impact of Plaintiff's chronic pain conditions on her ability to work. Id. Plaintiff disputes that the Magistrate Judge could have adequately considered the evidence without specifically analyzing each chronic pain condition. ECF No. 18 at 4.

19

The ALJ is required to consider "the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If [the ALJ] do[es] find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. § 404.1523.  This Court and other courts have held that failure to consider one impairment as severe was harmless where the court proceeded with analysis of a separate impairment. Cook ex rel. v. Colvin, No. 2:11cv362, 2013 WL 1288156, *1 (E.D.Va. March 1, 2013); Bennett v. Colvin, No. 2:13CV189, 2014 WL 1603737, at *11 (E.D. Va. Apr. 21, 2014); Jackson ex rel. K.J. v. Astrue, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) ("As a result, an error to list an impairment at Step Two is harmless error when: (1) the ALJ found that the plaintiff suffered from other severe impairments; (2) the ALJ continued with the sequential evaluation process; and (3) the ALJ considered the impairment at other steps of the evaluation process."). Accordingly, this Court finds no error in the R&R on this issue.

V.    CONCLUSION

Having reviewed the R&R and Plaintiff's Objections, the Court: (1) **ACCEPTS** the R&R, ECF No. 17; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration; (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12; and (4) **GRANTS** Commissioner's Motion for Summary Judgment, ECF No. 14.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
September ___, 2016

20